COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and Friedman
Argued by videoconference

SARAH NICOLE MYERS

v.     Record No. 0955-21-3

BEDFORD COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE GLEN A. HUFF
FEBRUARY 22, 2022

FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Rebecca L. Wetzel (Wetzel Legal, PLLC, on brief), for appellant.

Brandon K. Butler, Senior Assistant County Attorney (Benjamin M.
Rathsam, Guardian *ad litem* for the minor child; The Law Office of
Fairchild & Yoder, PLLC, on brief), for appellee.

Sarah Nicole Myers ("mother") appeals orders from the Bedford County Circuit Court (the

"circuit court") terminating her residual parental rights to her daughter and approving the foster care

goal of adoption. Mother argues that the circuit court erred because there was insufficient evidence

to terminate her parental rights under Code § 16.1-283(B) or (C)(2). This Court finds no error and

affirms the circuit court's decision.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)).

Mother and Justen James Anthony White ("father") are the biological parents of the child who is the subject of this appeal.[2] The Bedford County Department of Social Services (the "Department") first became involved with the family in 2017, when it removed two of mother's older children for issues related to substance abuse and inadequate housing.[3] The Department had offered services, including counseling and a substance abuse assessment, to the family. In October 2019, the child at issue was born substance exposed and tested positive for methamphetamine and amphetamine at birth. The child struggled with respiratory issues associated with withdrawal symptoms and had to remain hospitalized for nine days. During this time, the Department and the police went to mother's home and found drug paraphernalia. Mother admitted to using methamphetamine within three days of giving birth to the child.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. This opinion includes evidence and factual findings from the circuit court necessary to address the assignments of error presented here. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, [this Court] unseals[s] only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] On February 8, 2021, the Bedford County Juvenile and Domestic Relations District Court terminated father's parental rights. Father filed a notice of appeal to the circuit court but later withdrew his appeal.

[3] Mother's two older children were subsequently placed in the custody of their paternal grandmother.

Due to concerns about substance abuse, housing, and parental capacity, the Department removed the child and placed her in foster care, where she has remained ever since. The Bedford County Juvenile and Domestic Relations District Court (the "JDR court") entered emergency and preliminary removal orders. The JDR court subsequently held that the child was abused or neglected and entered a dispositional order.

Once the child entered foster care, the Department required mother to participate in services and complete certain requirements, including addressing her long-standing history of substance abuse. Mother began using drugs when she was eight years old. She admitted to using methamphetamine while she was pregnant with the child and that she continued to use methamphetamine in the seven months following the child's birth. The Department offered mother detox services, which she declined. In May 2020, seven months after the child was born, mother attempted to complete an inpatient substance abuse treatment program but checked herself out after two days. In July 2020, mother completed a thirty-day inpatient substance abuse treatment program and reportedly has not used drugs since. The Department had also initially required that mother complete a substance abuse assessment, which she completed on August 5, 2020.

In addition to addressing her substance abuse, the Department further required mother to address its concerns regarding her mental health, including that she complete a psychological evaluation. Mother did not complete the psychological evaluation until September 18, 2020. According to the psychological evaluation, mother was "estimated to experience a *Moderate to Severe level of impairment in her psychological functioning and parenting abilities*" and had "[c]linically significant anxiety and depression." (Emphasis in original). The clinical provider recommended, among other things, that mother participate in weekly outpatient therapy, complete a parenting class, and follow up with her medical provider regarding her psychotropic

medication because it appeared ineffective. Mother began therapy in July 2020 and completed it in March 2021. She also completed the recommended parenting class. But mother stopped taking her prescribed psychotropic medication and told the Department that she had no interest in resuming it. Mother also subsequently told the Department that she could not work because of anxiety and applied for disability.

The Department also required mother to secure safe and stable housing. Mother inherited and owns her home. At the beginning of this case, the home was in a state of disrepair and, according to the guardian *ad litem*'s observations, it "was not suitable for anyone to live—much less a young child." In September 2020, the Department visited the home and gave mother a "fairly long list" of repairs it required her to complete. In the middle of December 2020, over a year after the child had been in foster care, mother informed the Department that she still had repairs to finish. One month later, the Department found that the inside of the home was appropriate except for the need for a lock on the bathroom door. But the Department also found a lot of debris outside the home that could injure the child. The delayed progress on the home repairs foreclosed any opportunity for the Department to consider allowing the child to visit the home.

The Department additionally required that mother develop a bond with the child through supervised visitation. Mother did not contact the Department regarding visitation during the child's first thirty days in foster care. In the nine months following the child's birth, mother visited the child only six times despite the thirty visitation opportunities the Department provided her. Mother began participating in virtual visits in August 2020 and consistently participated in in-person visits when they resumed thereafter.

In addition to all of the other requirements and services, the Department required that mother demonstrate understanding of the child's extensive medical needs. According to the

child's primary care physician, the child is susceptible to frequent illness. The child has a variety of medical conditions and sees ten different doctors and therapists on a regular basis with her foster parents. One such condition that the child suffers from is reactive airway disease, which is triggered by smoke. The child's doctors stated that she should never be around smoke or anyone who smokes for an extended period. Before and after the child is exposed to smoke, she must use a nebulizer to help her breathe. The Department informed mother of the child's medical conditions and that she would need to stop smoking before she could be reunited with the child. Mother, however, did not stop smoking.

On February 8, 2021, the JDR court terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed those rulings to the circuit court.

On June 3, 2021, the parties appeared before the circuit court for a *de novo* hearing. In addition to evidence of the history recited above, the Department presented evidence that mother has received all the child's medical records but has refused to go over them with the Department. It also presented evidence that, although mother had agreed with the Department that it was important for her to stop smoking, she also thought that her smoking would not be a problem so long as it was not directly in front of the child. Further, mother apparently told the Department that it should not care if she demonstrated a period without smoking because there was no guarantee she would not return to doing so in the future. Mother also had questioned the diagnosis of the child's respiratory disease and whether the child's triggers were actually an irritant for the child.

According to the guardian *ad litem*'s report, he visited mother the day before the hearing and asked her to describe the child's medical conditions. Mother said that the child had a "breathing thing," but she could not remember the name of the disease nor recall four of the child's other medical conditions. The guardian *ad litem* also reported that mother claimed on

numerous occasions that the doctors' guidance was not accurate based on her internet research and that the child did not need to be nebulized as often as the foster parents and doctors said she needed to be nebulized.

At trial, mother testified that she understood the significance of the impact that smoking had on the child's health. She further testified that she felt that she should discuss the child's medical conditions with the child's doctors instead of the Department. In addressing the guardian *ad litem*'s report, mother testified that nebulization was "an as[-]needed thing."

In addition to the evidence surrounding the child's health and mother's understanding thereof, the Department presented evidence that, notwithstanding the steps that mother had taken to address her own substance abuse, she had continued to maintain contact with father, who also had longstanding substance abuse issues and had pending charges for drug possession. Notably, the parents had a history of using drugs together. According to the Department, mother had stated that father would continue to be involved in the child's life even if he was battling the disease of addiction because he was the child's father. Mother demonstrated her commitment to involving father in his children's lives when, approximately one month before the circuit court hearing, mother picked up father to bring him to a birthday party for one of their older children, even though he had not received drug treatment.[4]

Finally, with respect to her employment, mother testified that she wanted to continue working despite the fact that she had applied for disability. She further testified that she had two part-time jobs at Dollar Tree and Goodwill and was hoping to work up to forty hours a week.

After hearing the evidence and arguments, the circuit court found that it was in the child's best interests to terminate mother's parental rights under Code § 16.1-283(B) and (C)(2) and approve the foster care goal of adoption. This appeal followed.

---

[4] Ultimately, mother did not bring father to the birthday party.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Mother challenges the circuit court's orders terminating her parental rights and approving the foster care goal of adoption. The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi*, 69 Va. App. at 552 (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

In terminating mother's parental rights, the circuit court found that the child was born substance exposed and that the child continues to suffer from the effects of that exposure. It further found that there were outstanding issues with mother's home, smoking, employment, and parental

capacity. The court found the mother's inability to quit smoking, which causes the child to experience difficulty breathing, was emblematic of mother's unwillingness and inability to remedy these circumstances. Finally, the court found that the circumstances were not substantially remedied in a reasonable period of time.

Mother argues that the circuit court was "plainly wrong in terminating her parental rights and approving a goal of adoption," especially considering the progress she made while the child was in foster care. Mother emphasizes that she overcame her substance abuse issues and enrolled for counseling with her therapist. As to her understanding of her child's medical conditions, mother argues that her skepticism of the Department's interpretations of the child's diagnosis should not be mistaken for an inability to address them, noting that she had reviewed the child's medical records and expressed her desire to speak with the medical professionals. The circuit court, mother says, inappropriately relied on "speculative worries" as to how she might respond to the child's health concerns. Finally, mother argues that she has removed father from the home and knows he cannot be in the child's life until he stops his drug use.

Notwithstanding the progress mother made in overcoming her substance abuse and addressing her mental health, the record shows that the child has a respiratory condition—triggered by mother's smoking—that makes it difficult for the child to breathe. Indeed, the child's doctors have recommended that the child never be around smoke or anyone who does smoke for an extended period. Accordingly, the Department told mother she needed to stop smoking for the sake of the child's health and for the child to live with her.

Although mother testified that she understood the significance of her smoking's impact on the child's health, that she reviewed her medical records, and that she wanted to speak to the child's doctors, she did not quit smoking in the two years following her daughter's birth. Moreover, the evidence undermines mother's supposed understanding of the child's medical needs, as the guardian

*ad litem*'s report demonstrates both her limited understanding of the child's medical issues and her admitted skepticism of the medical information she had been provided. Accordingly, the circuit court relied not on "speculative worries" as to how mother would respond to the child's health concerns but rather a demonstrated failure by the mother to do just that.

In addition, the evidence also undermines mother's claim that she understands that father cannot be in the child's life. Her actions demonstrated her intent to continue to associate with father notwithstanding his substance abuse issues. For instance, although mother did not ultimately bring father to her other child's birthday party, she had picked him up with the intent to do so despite knowing that he had not received treatment for his substance abuse. Finally, the record shows that mother had not remedied the unsuitable condition of her home until January 2021 (after the child had spent over a year in foster care) and that the Department still has outstanding concerns regarding the area outside of the home.

The child remained in foster care for over two years and had significant health concerns that required continuing care. Despite all the services provided, mother still had not demonstrated that she understood and could meet the child's needs. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). Considering the totality of the record, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).[5]

---

[5] With respect to mother's challenge of the foster care goal of adoption, this Court's "decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." *Toms*, 46 Va. App. at 265 n.3.

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming a termination of parental rights under one subsection of Code § 16.1-283 and refusing to address termination of parental rights under another subsection).  As this Court finds that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2), the Court does not reach the trial court's invocation of Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the Court affirms the circuit court's ruling.

*Affirmed.*